251 N.J. Super. 393 (1991)
598 A.2d 526
FRANK HENSCHKE, PLAINTIFF-APPELLANT,
v.
BOROUGH OF CLAYTON AND CLAYTON POLICE DEPARTMENT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 8, 1991.
Decided November 7, 1991.
*395 Before Judges MICHELS, O'BRIEN and CONLEY.
Seymour Wasserstrum, attorney for appellant.
White & Williams, attorneys for respondents (Michael O. Kassak, on the letter brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Plaintiff appeals from an order granting summary judgment to defendants. We affirm.
*396 In April 1984, plaintiff's residence at 702 North New Street, Clayton, New Jersey, was extensively damaged in a fire. As a result, plaintiff and his family moved out and plaintiff boarded up the property. At the time of the fire, the property was covered by a mortgage upon which there was a balance due of approximately $34,000. Since plaintiff had not made his mortgage payments for several months, the company holding the mortgage assigned it to the Department of Housing and Urban Development (HUD). Thereafter, representatives of HUD changed the locks and replaced the boards on the property.
On March 10, 1985, plaintiff learned of this and reported it to Patrolman Green of defendant police department. Officer Green accompanied plaintiff to the residence and noted that, although the property was boarded up and locked, the garage was unlocked. Plaintiff, his wife and the officer entered the residence and plaintiff claimed there were items missing. When they left, the officer secured the residence and turned the matter over to Sergeant Hansen, who spoke to plaintiff on March 12 at police headquarters.
Plaintiff told the sergeant that approximately $10,000 to $15,000 worth of "stuff" had been stolen from his house. The sergeant spoke with Mr. Beatty at the HUD office in Camden, who advised him that plaintiff had not made any mortgage payments since September 1983 and the property had been transferred to HUD. According to Mr. Beatty, he attempted to contact plaintiff unsuccessfully and the property had been boarded up by a contractor on behalf of HUD. The sergeant advised Mr. Beatty that plaintiff intended to sign complaints against the HUD office.[1] Plaintiff neither signed any complaints nor provided the police with a list of the property allegedly stolen. Plaintiff contends that the police department *397 failed to investigate, failed to take fingerprints,[2] and that the matter was "whitewashed." Plaintiff claimed that despite his urging the department failed to investigate the crime.
On March 29, 1988, plaintiff filed a complaint against the Borough of Clayton and its police department alleging that he suffered damages as a result of the police department's failure to investigate the alleged theft at his boarded-up vacant property. In another paragraph of the one-count complaint, plaintiff alleged that his civil rights were violated pursuant to 42 U.S.C.A. § 1983 et seq.
Defendants filed an answer admitting that plaintiff had reported the alleged theft to the police department, but denying the remaining allegations. Among the several separate defenses alleged was one that the action is barred under the New Jersey Tort Claims Act, N.J.S.A. 59:2-1 et seq., and another specifically asserting that plaintiff had failed to provide a notice of claim in accordance with N.J.S.A. 59:8-2.
On February 15, 1990, plaintiff, Sergeant Hauser, and Officer Green were deposed. Thereafter, defendants moved for summary judgment and specifically did not request oral argument. The motion was accompanied by a brief to which plaintiff responded, stating that the summary judgment was returnable August 31, 1990. On October 19, 1990, the motion judge granted defendant's motion for summary judgment and plaintiff appeals.
Apparently, the motion was granted on the papers since no oral argument had been requested. However, the motion judge failed to find the facts and state his conclusion in accordance with Rule 4:46-2 and Rule 1:7-4. Therefore, we have no explanation from the judge for his conclusion granting summary judgment. Ordinarily, in that circumstance, we would remand the matter to the trial judge with instructions to find *398 the facts and state his conclusion of law as required by the Rules. However, we conclude it is unnecessary to do that in this case because of the clarity of the parties' positions and the applicable law.
Summary judgments are to be granted with extreme caution. On a motion for summary judgment the moving papers and pleadings are to be considered in a light most favorable to the party opposing the motion, all doubts being resolved against the movant. See Ruvolo v. American Cas. Co., 39 N.J. 490, 499, 189 A.2d 204 (1963). The summary procedure is no substitute for a plenary trial. See United Advertising Corp. v. Borough of Metuchen, 35 N.J. 193, 196, 172 A.2d 429 (1961); Baer v. Sorbello, 177 N.J. Super. 182, 185, 425 A.2d 1089 (App.Div. 1981), certif. denied, 87 N.J. 388, 434 A.2d 1070 (1981). The rule requires that the judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2. The standards of decision governing the grant or denial of a summary judgment emphasize that a party opposing a motion is not to be denied a trial unless the moving party sustains the burden of showing clearly the absence of a genuine issue of material fact. At the same time, the standards are to be applied with discriminating care so as not to defeat a summary judgment if the movant is justly entitled to one. Judson v. People's Bank & Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954).
There is no dispute that plaintiff's house burned, was boarded up, had the locks changed and was reboarded by representatives of HUD, and that plaintiff reported to the police that his property had been stolen from the building. Plaintiff concedes that a patrolman accompanied him to the property and that he discussed the matter with Sergeant Hansen. Plaintiff does not dispute the statements that he did not file any complaints or a *399 list of the property allegedly stolen and that he was in arrears on his mortgage payments. The trial judge had the depositions of plaintiff and the officers available to him.
Accepting as true all of plaintiff's allegations and all reasonable inferences to be drawn from those allegations, summary judgment was nonetheless proper under the provisions of the New Jersey Tort Claims Act.[3]
The legislative purpose underlying the Tort Claims Act, N.J.S.A. 59:1-1 et seq., was thoroughly reviewed by the Supreme Court in Rochinsky v. State of N.J. Dept. of Transp., 110 N.J. 399, 541 A.2d 1029 (1988). The court noted that N.J.S.A. 59:2-1(a) "provides that the basic statutory approach of the [act] shall be that immunity of all governmental bodies in New Jersey is reestablished." Id. at 407, 541 A.2d 1029. The Legislature specifically rejected the rationale favoring governmental liability expressed in B.W. King, Inc. v. Town of West New York, 49 N.J. 318, 230 A.2d 133 (1967), observing that
[T]his approach is no longer necessary in light of this comprehensive Tort Claims Act. Rather the approach should be whether an immunity applies and if not should liability attach. It is hoped that in utilizing this approach the courts will exercise restraint in the acceptance of novel causes of action against public entities. [N.J.S.A. 59:2-1, Task Force comment (emphasis in original)] [Rochinsky, 110 N.J. at 408, 541 A.2d 1029]
Immunity is the dominant consideration of the act. Kolitch v. Lindedahl, 100 N.J. 485, 498, 497 A.2d 183 (1985) (O'Hern, J. concurring). Even when one of the act's provisions establishes liability, that liability is ordinarily negated if the public entity possesses a corresponding immunity. See Malloy v. State, 76 N.J. 515, 519, 388 A.2d 622 (1978). Neither a public entity nor a public employee is liable for failure to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service. N.J.S.A. 59:5-4.
*400 We comprehensively analyzed that section in Suarez v. Dosky, 171 N.J. Super. 1, 407 A.2d 1237 (App.Div. 1979), certif. denied, 82 N.J. 300, 412 A.2d 806 (1980). Many of the pertinent cases were also reviewed by us in Lee v. Doe, 232 N.J. Super. 569, 557 A.2d 1045 (App.Div. 1989), including Wuethrich v. Delia, 134 N.J. Super. 400, 341 A.2d 365 (Law Div. 1975) (Wuethrich I), and Wuethrich v. Delia, 155 N.J. Super. 324, 382 A.2d 929 (App.Div. 1978) (Wuethrich II). In Wuethrich I, the trial judge had denied the township's motion to dismiss the complaint for failure to state a claim upon which relief could be granted. However, the judge ultimately granted summary judgment, which we affirmed on appeal by leave granted in Wuethrich II in which we stated:
While it is true that police officers have a duty to investigate information from citizens concerning unlawful or criminal activity, State v. Royal, 115 N.J. Super. 439 [280 A.2d 201] (App.Div. 1971), certif. den. 59 N.J. 294 [281 A.2d 807] (1971), the failure of the police to make an arrest as a consequence does not subject the municipality to tort liability. N.J.S.A. 59:5-5. Municipalities are expressly immunized from tort liability for the failure to provide police protection or the failure to provide sufficient police protection. N.J.S.A. 59:5-4. A public entity such as a municipality is not liable in tort for its failure to protect against the criminal propensity of third persons. Setrin v. Glassboro State College, 136 N.J. Super. 329 [346 A.2d 102] (App.Div. 1975). We find no merit in the argument of plaintiff that the provisions of N.J.S.A. 59:2-2 and 59:2-3 diminish the explicit grant of immunity contained in N.J.S.A. 59:5-4 and 59:5-5. [Wuethrich, 155 N.J. Super. at 326, 382 A.2d 929]
Affording plaintiff the benefit of all of his contentions, his argument boils down to a claim that the municipality did not sufficiently investigate the theft of articles from his home. There is no dispute that Officer Green went to the scene, that Sergeant Hansen discussed the matter with HUD officials, and plaintiff had a full opportunity to file complaints, although the sergeant prudently advised him that he should discuss the matter with his attorney first. There is nothing to suggest that the police engaged in any conduct which gave rise to a special relationship with plaintiff. See Lee v. Doe, supra, 232 N.J. Super. at 579, 557 A.2d 1045. We conclude, on the undisputed facts, that defendants were immune from plaintiff's suit pursuant to the Tort Claims Act.
*401 Likewise, plaintiff's claim under 42 U.S.C.A. § 1983 will not lie against these defendants. Contrary to defendants' assertions, municipalities are "persons" under 42 U.S.C.A. § 1983 and are therefore not wholly immune from suit under the statute. Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 663, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Nevertheless, a municipality cannot be held liable under § 1983 on a respondeat superior theory. Id. at 691, 98 S.Ct. 2018. Moreover, under 42 U.S.C.A. § 1983, a plaintiff is required to set forth specific conduct by the state or its officials which violated the constitutional rights of the plaintiff. Hilliard v. New Jersey Army Nat. Guard, 527 F. Supp. 405 (D.N.J. 1981). Plaintiff is required to establish with specificity that defendant deprived him of a right secured by the Constitution and that such deprivation was caused by a person acting under color of state law. Reid v. Barrett, 467 F. Supp. 124 (D.N.J. 1979), aff'd, 615 F.2d 1354 (3rd Cir.1990). Here, plaintiff does not set forth any details of his constitutional claim. See Colburn v. Upper Darby Tp., 838 F.2d 663, 666 (3rd Cir.1988), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). Beyond the lack of specificity, it has been decided by the Supreme Court that there is no liability under § 1983 for negligent acts by officials which result in unintended injuries to life, liberty or property. Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), citing Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).
Except for some unspecified claims by plaintiff that Sergeant Hansen did not like him or that his attitude changed after receiving a telephone call, there are no specific allegations of any conduct by the officers reflecting violations of plaintiff's constitutional rights.
Affirmed.
NOTES
[1] According to the police report, Sergeant Hansen was advised by a representative from the attorney general's office that he had been contacted by the HUD office, advised of the incident, and that, if complaints were signed, summonses should be issued for the federal employees rather than warrants.
[2] According to the police report, fingerprints could not be taken because of the fire condition of the interior of the residence.
[3] Although defendants pled as a separate defense that plaintiff had failed to comply with the notice provisions of the Tort Claims Act, this is not argued either in the brief filed with the trial court or with us. Thus, we express no opinion on that contention.